IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENNIFER FABIAN
    Plaintiff,

v.

ST. MARY'S MEDICAL CENTER
    Defendant.

Civil Action
No. 16-4741

## MEMORANDUM

**Jones, II    J.**                                                     **August 11, 2017**

### I.    INTRODUCTION

Pending before the court is Defendant St. Mary's Medical Center's ("St. Mary's") Partial Motion to Dismiss Plaintiff's Second Amended Complaint. The motion seeks dismissal of various claims of discrimination, harassment, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 42 U.S.C. § 2601, *et seq.*, as well as various demands for compensatory and punitive damages under the ADA and FMLA. (Second Am. Compl.)[1] For the reasons set forth below, Defendant's Motion shall be granted in part and denied in part.

### II.    BACKGROUND

Plaintiff is an adult individual with qualified disabilities under the ADA—depression and anxiety—resulting from the loss of her young son to Leukemia in 2007. (SAC ¶¶ 7, 16.) Defendant was aware of Plaintiff's disabilities when it hired her as a dietary aid in its cafeteria in July 2011. (SAC ¶¶ 15, 17.) Plaintiff worked the overnight shift and was able to perform her

---

[1] Unless otherwise indicated, any references to the Second Amended Complaint will be abbreviated to "SAC."

1

essential job functions with reasonable accommodations. (SAC ¶¶ 15-16.) As a reasonable accommodation for her qualified disabilities, Defendant allowed Plaintiff to take paid time when needed from 2011 to 2014, such as on the dates of her son's passing and birthday. (SAC ¶ 20.)

At some unspecified point, Patricia Spurrier ("Spurrier"), an agent of Defendant, began repeatedly denying Plaintiff's requests to use her paid time off, thereby raising Plaintiff's anxiety. (SAC ¶¶ 21-22.)[2] Due to her heightened anxiety, Plaintiff requested to use her paid time off in March of 2015, but this request—as well as several unspecified subsequent requests—were denied by Spurrier. (SAC ¶¶ 23-24.) Plaintiff contacted Human Resources ("HR"), which informed her that she would have to resolve the issue with Spurrier. (SAC. ¶¶ 24-25.) Bill Laffler ("Laffler"), the manager of "dietary and cafeteria," reprimanded Plaintiff for contacting HR. (SAC ¶ 26.) When Plaintiff informed Laffler of Spurrier's conduct, he told her that she was to deal with Spurrier only. (SAC ¶¶ 27-28.) Moments later, Spurrier contacted Plaintiff and made various threats, such as, "If you want war you'll get war, watch your back" and "we will see." (SAC ¶ 29.) Spurrier also later made various "disparaging remarks" to and about Plaintiff within earshot and used "inappropriate language." (SAC ¶ 31.)

On or about April 10, 2015, Plaintiff requested to use her paid time off on July 9th and 12th of that year—the dates of her son's death and birthday. (SAC ¶ 32.) In doing so, Plaintiff followed Defendant's policy of seeking approval from a superior before taking paid time off. (SAC ¶ 33.) At some unspecified point in time, Spurrier told Plaintiff that she would have to wait until the schedule for that week was made to know if the request was approved. (SAC ¶ 34.)

---

[2] Plaintiff does not specify in what month or year Spurrier's conduct began. Plaintiff alleges that, "From 2011-2014, Defendant provided reasonable accommodations for Plaintiff." (SAC ¶ 20.) Immediately after this, Plaintiff alleges that "her requests were repeatedly denied by agent of [Defendant], Patricia Spurrier." (SAC ¶ 21.) She alleges that Spurrier denied requests made in March 2015, but is unclear if this was the first time the denial occurred. (SAC ¶ 23.)

2

Plaintiff explained that she needed those days off as a reasonable accommodation for her disabilities and again sought approval of her request. (SAC ¶ 35.) On July 2, 2015, Plaintiff learned that her request had been denied, so she renewed the request. (SAC ¶¶ 36-37.) In response, Spurrier stated "Oh well, I don't know what to tell you it was not approved." (SAC ¶ 37.)

While on her way to work on July 6, 2015, Plaintiff remembers having tunnel vision and passing out. (SAC ¶ 38.) She went to her doctor, who found that she had suffered a nervous breakdown and rendered her unable to work for three weeks. (SAC ¶¶ 38-40.) When informed of Plaintiff's condition, Spurrier replied, "Well isn't that convenient." (SAC ¶ 41.) Plaintiff's doctor determined that she would be unable to work until August 1, 2015 and placed limitations on her abilities to work four consecutive night shifts in a row. (SAC ¶¶ 42-43.) Leading up to August 1, 2015, Plaintiff contacted Spurrier regarding her schedule for that week, however, Spurrier never responded. (SAC ¶¶ 44-45.) When Plaintiff was cleared by her doctor on July 29, 2015 to return to work, she again contacted Spurrier regarding her schedule, but Plaintiff's several messages went unreturned. (SAC ¶¶ 46-47.)

In mid-August, an HR representative informed Plaintiff that she would be placed back onto the schedule when there was room. (SAC ¶ 48.) Two months later, on September 28, 2015, Plaintiff was returned to her working schedule, but without regard to her doctor's restrictions on her ability to work consecutive nights. (SAC ¶¶ 52-53.) Plaintiff requested that her schedule be adjusted, but Spurrier never responded. (SAC ¶ 54.)

On October 25, 2015, Defendant hired a new employee, Ms. Fitch ("Fitch"), to replace Plaintiff's former co-worker. (SAC ¶ 55.) Ms. Fitch does not have any disabilities. (SAC ¶ 56.) Soon thereafter, Plaintiff's hours were reduced by almost half, while Fitch was given many of

3

Plaintiff's regular shifts and was scheduled for 40 hours per week. (SAC ¶¶ 55, 57.) Plaintiff attempted to contact Spurrier about this, but again received no response. (SAC ¶ 58.) In November of 2015, after Defendant changed the cafeteria's hours, Plaintiff's hours were again reduced, while Fitch's hours were not. (SAC ¶ 59.) On November 5, 2015, Plaintiff was removed from the schedule entirely. (SAC ¶¶ 60, 91.) As of the date Plaintiff commenced suit in federal court, she had not heard from Spurrier or HR (despite multiple attempts to contact them regarding her schedule), and had been put back on the schedule. (SAC ¶¶ 61-62.) Plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and ultimately received a Right to Sue letter.[3]

## III. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S.

---

[3] Although referenced as attachments, Plaintiff failed to attach the charge of discrimination and the right to sue letter to her Second Amended Complaint. Attached as "Exhibit A" to Plaintiff's originally-filed Complaint, the charge of discrimination lacks corresponding dates for both Plaintiff's and the notary's signatures. (ECF No. 1 Ex. A.) The document attached as "Exhibit B" to Plaintiff's originally-filed Complaint, which is referred to as the right to sue letter, is in fact *not* a right to sue letter. On July 17, 2017, this Court ordered Plaintiff to electronically file a copy of the right to sue letter and documentation definitively establishing the date the charge of discrimination was filed with the EEOC. (ECF No. 18.) On June 25, 2017, Plaintiff filed the right to sue letter—dated June 9, 2016—but merely refiled the undated charge of discrimination without any supplemental documentation establishing the date on which it was filed. (ECF No. 19.)

4

544, 555 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id. Accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## IV. DISCUSSION

### A. Failure to Comply With Federal Pleading Rules

Plaintiff's Second Amended Complaint consists of two counts: Violations of the Americans with Disabilities Act (Count I) and Violations of the Family Medical Leave Act (Count II). In Count I, Plaintiff combines various theories of recovery by repeatedly using the phrase "discriminatory/harassing/retaliatory" to describe Defendant's alleged conduct under the ADA. The pleadings are woefully lacking with regard to critical dates and any level of specificity regarding what conduct is being attributed to what alleged violation: unlawful harassment, unlawful retaliation, unlawful disparate treatment, or unlawful disparate impact?

Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on "'sufficient notice to prepare their defense' and also ensure 'that the Court is sufficiently informed to determine the issue.'" *De Lage Landen Fin. Servs. v. Barton Nelson, Inc.*, Civ. No. 08-0530, 2008 U.S. Dist. LEXIS 91441, at *27 (E.D. Pa. Nov. 4, 2008) (quoting *Philadelphia Dressed Beef Co. v. Wilson & Co.*, 19 F.R.D. 198, 201 (E.D. Pa. 1956)). This standard operates in tandem with that of Rule 10, which provides in pertinent part:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity,

> each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Fed.R.Civ.P. 10(b).

"The purpose of Rule 10 is to create clarity in pleadings, which allows a defendant and the Court to determine whether there are sufficient facts to support a claim entitling a plaintiff to relief." *Young v. Centerville Clinic, Inc.*, Civ. No. 09-325, 2009 U.S. Dist. LEXIS 111893, at *9 (W.D. Pa. Dec. 2, 2009). "Where a complaint fails to comply with Rule 10(b), dismissal of the complaint is within the court's discretion." *Borrell v. Weinstein Supply Corp.*, Civ. No. 94-2857, 1994 U.S. Dist. LEXIS 13741, at *6 (E.D. Pa. Sept. 27, 1994) (quoting *Scott v. Township of Bristol*, No. CIV.A. 90-1412, 1990 WL 178556, at *15 (E.D. Pa. Nov. 14, 1990)).

In this case, review of Count I of Plaintiff's Second Amended Complaint reveals consolidation and conflation of . . .

> [S]eparate claims, involving different sets of operative facts, legal theories, and requirements of proof. They are founded on "separate transactions or occurrences" for the purposes of Rule 10(b). Furthermore, the Court finds that under the circumstances, requiring these claims to be pled in separate counts would "facilitate the clear presentation of the matters set forth" such that it would significantly aid Defendants in framing their responses[.]

*Nicolaysen v. BP Amoco Chem. Co.*, Civ. No. 01-5465, 2002 U.S. Dist. LEXIS 9325, at *10 (E.D. Pa. May 23, 2002).

This Court is unable to conduct an accurate assessment of the plausibility of Plaintiff's claims as they currently exist. Likewise, "[d]efendant cannot be expected to respond to Plaintiff's claims because it is unclear what claims are being asserted and what facts relate to each claim." *Rosado v. Lynch*, Civ. No. 15-3999, 2017 U.S. Dist. LEXIS 88589, at *8 (D.N.J. June 8, 2017). Plaintiff's legal theories are set forth as one conclusory tagline, without specific events or facts to individually support each. As such, "a revised amended complaint that

6

sufficiently complies with Rule 10(b) will ultimately clarify the record, streamline discovery, reduce the litigation costs for the parties, and preserve the Court's resources." *Rosado*, 2017 U.S. Dist. LEXIS 88589, at *10. Accordingly, Count I of Plaintiff' Second Amended Complaint shall be dismissed with leave to amend.

### B. Count II: Violations of the FMLA

#### 1. Plaintiff Has Sufficiently Pled a Retaliation Claim Under The FMLA

Defendant next requests that Plaintiff's claim of retaliation under the FMLA in Count II of her Second Amended Complaint be dismissed because "Plaintiff simply has not plausibly pled any causal relationship between her taking of FMLA leave from July 2015 and any adverse or materially adverse action." (Def.'s Mot. 13.) This Court disagrees and shall deny Defendant's request.

To state a claim of retaliation under the FMLA, plaintiffs must show: "(1) [they] took an FMLA leave, (2) [they] suffered an adverse employment decision, and (3) the adverse decision was causally related to [their] leave." *Conoshenti*, 364 F.3d at 146. An adverse employment action "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014). For example, being terminated or permanently replaced are adverse employment actions because these "certainly alter[] [the] privileges of employment." *Id.* (internal quotations omitted). In other words, where an employee is unable to return to his or her position, there has been an adverse employment action. *Id.* However, where an employee remains unable to perform an "essential function" of his or her position after the use of FMLA leave, the failure to restore him or her to the position does not violate the FMLA. 29 C.F.R. § 825.216(c).

7

A plaintiff may establish a causal connection between the use of FMLA leave and a subsequent adverse employment action by demonstrating "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action." *Budhun*, 765 F.3d at 258. There is no bright line rule for determining when temporal proximity is "unduly suggestive." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012). However, where an adverse employment action occurs within ten days of the use of FMLA leave, the temporal proximity may be deemed unduly suggestive. *Murphy v. McLane E., Inc.*, No. 16-cv-1055, 2017 U.S. Dist. LEXIS 27411, at *9-10 (M.D. Pa. Feb. 28, 2017) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003); *Lichtenstein*, 691 F.3d at 307; *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)).

Alternatively, a plaintiff may establish a causal connection by showing "a pattern of antagonism coupled with timing to establish a causal link." *Budhun*, 765 F.3d at 258. *See also, e.g., Murphy*, 2017 U.S. Dist. LEXIS 27411, at *12-13 (finding plaintiff sufficiently pled causation because he alleged that the defendants previously terminated employees seeking FMLA leave and that they fabricated a reason to terminate him within a month of his taking leave). Additionally—and particularly pertinent to the instant case—is the notion that the "failure to return an employee's phone calls ... certainly suggests an antagonistic attitude toward the employee, particularly where ... such refusal began after the employee initiated FMLA leave, and continued despite regular communications from the employee." *Hofferica v. St. Mary Med. Ctr.*, 817 F. Supp. 2d 569, 585 (E.D. Pa. 2011).

Plaintiff suffered an adverse employment action on August 1, 2015—when Defendant failed to place her back on the work schedule. Defendant argues that "Plaintiff affirmatively pleads that her physician did not return her to work full duty in [sic] or about August 1, 2015"

8

and that "under that set of circumstances Plaintiff did not have a right to job restoration under the FMLA." (Def.'s Mot. 14.) Plaintiff indeed acknowledges that her doctor "placed limitations on [her] abilities to work four consecutive nights in a row." (SAC ¶ 43.) However, neither Defendant nor Plaintiff has claimed that working four or more consecutive night shifts was an essential function of Plaintiff's position. Therefore, this Court cannot conclude—at this stage of the litigation—that Plaintiff did not have a right to reinstatement on August 1, 2015.

Plaintiff has also sufficiently pled a causal connection between Defendant's failure to reinstate her on August 1, 2015 and her use of FMLA leave through unusually suggestive temporal proximity. Plaintiff informed Defendant of her medical condition and began her FMLA leave in early July 2015. (SAC ¶¶ 40-42.) Defendant was on notice that Plaintiff would be able to return to work on August 1, 2015. (SAC ¶ 42.) Plaintiff was medically cleared to return to work on July 29, 2015. (SAC ¶ 46.) However, Plaintiff was not placed back onto the work schedule until September 28, 2015. (SAC ¶ 52.) The failure to reinstate Plaintiff upon her medical clearance certainly altered her privileges of employment and adversely affected her status as an employee. This adverse employment action also occurred immediately after Plaintiff's use of protected leave, demonstrating an unduly suggestive temporal proximity.

Additionally, Plaintiff has sufficiently pled a pattern of antagonism as a basis of causation. Plaintiff alleges that she was removed from the work schedule completely in November 2015. (SAC ¶ 61.) This constituted an adverse employment action, as Plaintiff was effectively terminated. Plaintiff alleges that, in the weeks prior to this "constructive" termination, Spurrier failed to return Plaintiff's messages regarding her return to work after the use of her FMLA leave and that Spurrier continued to ignore Plaintiff's attempts at contact after Plaintiff returned to work. (SAC ¶¶ 47, 54, 58.) Additionally, Plaintiff alleges that Defendant has a

9

documented history of "taking negative action against employees who use FMLA leave." (SAC ¶ 88.) Plaintiff has, therefore, sufficiently pled a pattern or antagonism leading up to her ultimate removal from the work schedule, and has thereby established a causal connection between the use of her FMLA leave and the adverse employment action.

For the foregoing reasons, Defendant's request that Plaintiff's claim of FMLA retaliation in Count II be dismissed shall be denied.

### 2. Plaintiff Has Failed to Sufficiently Plead a Pattern or Practice Claim Under the FMLA

Defendant further requests that Plaintiff's pattern or practice of FMLA retaliation claim in Count II be dismissed because Plaintiff has not "pled any facts related to any other individuals such that this Court could reasonably infer any systematic 'pattern and practice' on the part of [Defendant]. (Def.'s Mot. 16.) This Court agrees.

For a pattern or practice claim to survive a motion to dismiss, "[a] plaintiff must plead factual content that allows the court to draw a reasonable inference that the defendant engaged in more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *United States v. Noel Learning Cmtys., Inc.*, 676 F. Supp. 2d 379, 383 (E.D. Pa. 2009) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)) (internal quotations omitted). A complaint must sufficiently allege that the unlawful practice "was the company's standard operating procedure – the regular rather than the unusual practice." *Id.* (quoting *Teamsters*, 431 U.S. at 336).

A plaintiff is also generally required to identify other individuals against whom the defendant engaged this conduct for the claim to survive a motion to dismiss. *See, e.g., Snider v. Wolfington Body Co.*, No. 16-02843, 2016 U.S. Dist. LEXIS 143116, at *15 (E.D. Pa. Oct. 17, 2016) (dismissing pattern or practice claim because plaintiff did not identify "any other pregnant

women against whom Defendants discriminated"); *Noel Learning*, 676 F. Supp. 2d at 385 (granting motion to dismiss pattern or practice claim regarding an alleged "widespread discriminatory policy at all levels of schooling" within a system, when the plaintiff was only able to demonstrate a pattern or practice with regard to eleven children at the preschool level); *Harold v. Barnhart*, 450 F. Supp. 2d 544, 559 (E.D. Pa. 2006) (denying motion to dismiss pattern or practice claim because the plaintiff alleged that the defendant had a pattern or practice of systematically removing "career African-American staff persons" and that the plaintiff and "three other African American employees were replaced by a Caucasian in this manner.").

Plaintiff has not sufficiently alleged that Defendant engaged in a pattern or practice of retaliation because she has failed to identify other similarly affected employees. Plaintiff alleges that "Defendant has a documented pattern and practice of taking negative action against employees who use FMLA leave, and a pattern and practice of attempting to set-up the termination of employees who notify Defendant of the need to use protected FMLA leave, and/or who actually use protected FMLA leave, and/or who notify Defendant of a serious medical condition." (SAC ¶ 88.) This statement is largely conclusory, and Plaintiff does not identify with sufficient specificity any other employees against whom Defendant engaged in a pattern or practice of unlawful conduct. Accordingly, Plaintiff's pattern or practice claim in Count II shall be dismissed. However, inasmuch as this Court cannot conclude that amendment of this "pattern or practice" claim would be futile, Plaintiff shall be granted leave to do so.

### C. Damages under the ADA and FMLA.

#### 1. Plaintiff Cannot Seek Compensatory, Emotional Distress, and Punitive Damages for Retaliation under the ADA

Defendant requests that Plaintiff's demand for compensatory, emotional distress, and punitive damages with respect to Plaintiff's retaliation claim under the ADA in Count I be dismissed. (Def.'s Mot. 16-17.) Because the anti-retaliation provision of the ADA does not allow for such damages, Defendant's request shall be granted.

The anti-retaliation provision of the ADA—42 U.S.C. §12203—imports the remedies available under Title VII, which do not include damages for emotional distress or punitive damages. Section 12203 redirects to Section 12117, the enforcement provision of the ADA. 42 U.S.C. § 12203(c). Section 12117, in turn, redirects to the enforcement provisions of Title VII, including 42 U.S.C. § 2000e-5. 42 U.S.C. § 12117(a). Section 2000e-5, the only section that provides remedies available to an "aggrieved party," states that a court may order equitable relief, such as injunctive relief and back-pay. 42 U.S.C. § 2000e-5(g)(1).

The Civil Rights Act of 1991 expanded the remedies available under certain provisions of the ADA. However, this expansion does not apply to the anti-retaliation provision. Section 1981a of the Civil Rights Act of 1991 provides:

> In an action brought by a complaining party under the powers, remedies, and procedures set forth in [42 U.S.C.A. §§ 2000e-5 or 2000e-16 ] (as provided in … the Americans with Disabilities Act of 1990 (42 U.S.C. § 12117(a) … ) against a respondent who engaged in unlawful intentional discrimination … under … section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12112 ), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages … from the respondent.

42 U.S.C. § 1981a(a)(2).

There is no mention of the anti-retaliation provision; nothing in the interrelated statutes allows a plaintiff to demand compensatory, emotional distress, or punitive damages in ADA retaliation claims. *See, e.g.*, *Slayton v. Sneaker Villa, Inc.*, No. 15-0074, 2017 U.S. Dist. LEXIS 39327, at *34-35 (E.D. Pa. Mar. 20, 2017) (granting defendant's motion to dismiss plaintiff's request for punitive damages in connection with her ADA retaliation claim); *McFadden v. Biomedical Sys. Corp.*, No. 13-4487, 2014 U.S. Dist. LEXIS 2363, at *16-17 (E.D. Pa. Jan. 9, 2014) ("[P]unitive and compensatory damages are not available remedies where a plaintiff lodges an ADA retaliation claim."); *Santana v. Lehigh Valley Hosp. & Health Network*, Civil Action No. 05-CV-01496, 2005 U.S. Dist. LEXIS 16677, at *6 (E.D. Pa. Aug. 11, 2005) ("[C]ompensatory and punitive damages are not available to the plaintiff for her ADA retaliation claim.").

In view of the foregoing, Plaintiff's demands for these particular damages as they relate to her retaliation claim in Count I are improper. Plaintiff alleges that, "[a]s a direct/proximate result of the…ongoing…retaliatory actions of Defendant, in violation of the ADA," she suffered "financial injury including but not limited to past loss of earnings, future loss of earnings, loss of earning potential, and loss of benefits;" "emotional and mental injuries including but not limited to past and present pain and suffering, humiliation, and embarrassment;" and "professional injuries, including but not limited to damage to her professional development." (SAC ¶¶ 75-77.) Plaintiff also requests the imposition of punitive damages. (SAC ¶ 78.) Accordingly, Plaintiff's additional demands with respect to her ADA retaliation claim, other than damages for past loss of earnings, shall be stricken.

### 2. Plaintiff Cannot Seek Compensatory, Emotional Distress, and Punitive Damages under the FMLA

Defendant next requests that Plaintiff's demand for emotional distress, pain and suffering, and punitive damages in Count II be dismissed because the FMLA does not allow for such damages. (Def.'s Mot. 16.) This Court agrees.

Unlike the ADA, the statutory language contained in the provisions of the FMLA provides a clear, comprehensive remedial framework. *McCall v. City of Phila.*, No. 11-5689, 2014 U.S. Dist. LEXIS 24119, at *30 (E.D. Pa. Feb. 25, 2014). The enforcement provision states that any employer who violates the provisions of the statute is liable to "any eligible employee affected" for "any wages, salary, employment benefits or other compensation denied or lost to such employee by reason of the violation" and "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1).

The FMLA does not permit damages for emotional distress or punitive damages. *See Brown v. Nutrition Management Services Co.* Nos. 08-3840, 09-1779, 2010 U.S. App. LEXIS 5535, at *5 n. 3 (3d Cir. Mar. 17, 2010) (citing § 2617(a)) (opining that the statutory text of the FMLA supports the conclusion that compensatory damages for past and future pain, suffering, or emotional distress and punitive damages are not recoverable under the statute); *see also, Quinones v. Lehigh Valley Health Network, Inc.*, No. 5:14-cv-2410, 2015 U.S. Dist. LEXIS 127421, at *13 (E.D. Pa. Sep. 22, 2015) (granting defendant's motion to strike plaintiff's demand for punitive damages and emotional distress damages under the FMLA); *Lloyd v. Wyo. Valley Health Care Sys.*, 994 F. Supp. 288, 291 (M.D. Pa. 1998) ("The FMLA does not provide for emotional distress as damages."). Accordingly, Defendant's request shall be granted.

### 3. Plaintiff Cannot Seek Damages for Physical Pain and Suffering Under Either The ADA or The FMLA

Lastly, Defendant requests that Plaintiff's demand for "damages related to any physical injury damages in the prayer for relief" be stricken from her Second Amended Complaint. (Def.'s Mot. 18.) This request is in reference to Plaintiff's demand for damages for "physical ... pain and suffering." (SAC 15.) Defendant does not raise the issue of recoverability of such damages under the FMLA, instead focusing solely on the recoverability under the ADA. (Def.'s Mot. 18.) However, Plaintiff argues that both statutes provide for physical pain and suffering damages. (Pl.'s Rep. 17.) This Court disagrees.

The statutory language of Title VII and the Civil Rights Act of 1991, which collectively provide the remedies available for ADA violations, does not include compensatory damages for physical pain and suffering. As discussed above, the Civil Rights Act of 1991 expanded the remedies available in ADA discrimination cases to include compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). The express language does not include nor provide for damages for physical pain and suffering.

In *Aponik v. Verizon Pa., Inc.*, the court determined that compensatory damages for personal physical injuries were not recoverable under the ADA. 106 F. Supp. 3d 619, 625 (E.D. Pa. 2015). In so holding, said court opined that "the ADA's stated purpose and enumerated list of remedies informs courts that the statute's goal to prevent disability discrimination is achieved by remedies specifically addressed to the harm resulting from such discrimination, i.e., *emotional pain*, past and future monetary losses." *Id.* at 623 (emphasis added). *Aponik* did not allow personal physical injury damages because "the ADA lists specific remedies and physical injury is not among them." *Id.* at 624. As such, the ADA's express language specifically excludes

15

physical pain and suffering. 42 U.S.C § 12117(a); 42 U.S.C. § 2000e-5(g)(1); 42 U.S.C. § 1981a(b)(3).

Similarly, physical pain and suffering damages are not recoverable under the FMLA, as the remedies set forth in § 2617 are the "exclusive remedies available for a violation of the FMLA." *McCall*, 2014 U.S. Dist. LEXIS 24119, at *30-31; *see also Churchill v. Star Enters.*, Civ. No. 97-3527, 1998 U.S. Dist. LEXIS 6068, at *18 (E.D. Pa. Apr. 17, 1998) ("Emotional damages, pain and suffering, are not compensable under [the FMLA].") Accordingly, Plaintiff's demand for physical pain and suffering damages shall be dismissed.

## V. CONCLUSION

For the reasons set forth above, Defendant's Partial Motion to Dismiss shall be granted in part and denied in part. Count I of Plaintiff's Second Amended Complaint shall be dismissed with leave to amend. Defendant's request that Plaintiff's retaliation claim under the FMLA in Count II be dismissed shall be denied. Defendant's request that Plaintiff's pattern or practice claim in Count II be dismissed shall be granted with leave to amend. Plaintiff's demand for compensatory damages—other than those for past earning losses—and for punitive damages with respect to her ADA retaliation claim in Count I shall be stricken. Plaintiff's demand for emotional distress and punitive damages under the FMLA in Count II shall also be stricken, as shall Plaintiff's demand for physical pain and suffering damages under the ADA and FMLA.

An appropriate Order follows.

BY THE COURT:

_____
C. Darnell Jones, II    J.