**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| JENNIFER FABIAN | : | |
| Plaintiff, | | |
| | | CIVIL ACTION |
| v. | : | NO. 16-4741 |
| | | |
| ST. MARY'S MEDICAL CENTER | | |
| Defendant. | : | |


**MEMORANDUM**

**Jones, II    J.**                                                            **August 29, 2018**

### I.    Introduction

Plaintiff Jennifer Fabian commenced the above-captioned action, alleging Defendant

violated the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101, *et seq*. (Count I), the

Family and Medical Leave Act ("FMLA"), 42 U.S.C. §§ 2601, *et seq*. (Count II), and the

Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a) (Count III). Plaintiff has since

requested that this Court dismiss Count III, while she continues to pursue Counts I and II.

Currently before the court is Defendant's Partial Motion to Dismiss Plaintiff's Third Amended

Civil Action Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). Defendant also requests an award

of sanctions for Plaintiff's failure to cure her defective pleading in accordance with this Court's

prior ruling regarding same. For the reasons set forth below, Defendant's Motion shall be granted

in part and denied in part.

## II.    Background

Plaintiff is an adult individual with qualified disabilities under the ADA—depression and anxiety—resulting from the loss of her young son to Leukemia in 2007. (TAC ¶¶ 7, 16.)[1] Defendant was aware of Plaintiff's disabilities when it hired her as a dietary aide in its cafeteria in July 2011. (TAC ¶¶ 15, 17.) Despite her diagnoses, Plaintiff was able to perform the essential functions of her job with reasonable accommodations. (TAC ¶ 16.) Between 2011 to 2014, Defendant allowed Plaintiff to take paid time when needed, such as on the date of her son's passing and his birthday, when her levels of anxiety rose and made her unable to perform the job's essential functions. (TAC ¶ 20.)

At some unspecified point, the individual in charge of Plaintiff's scheduling, Patricia Spurrier ("Ms. Spurrier"), began denying Plaintiff's requests for time off. (TAC ¶¶ 21, 25.) For example, in March 2015, Plaintiff requested "well in advance" to use some of her paid time off, but the request was denied. (TAC ¶ 23.) Plaintiff contacted Human Resources ("HR"), which informed her that she would have to resolve the issue with Ms. Spurrier. (TAC ¶¶ 24-25.) Bill Laffler ("Mr. Laffler"), the manager of "dietary and cafeteria," reprimanded Plaintiff for contacting HR. (TAC ¶ 26.) When Plaintiff informed Mr. Laffler of Ms. Spurrier's conduct, he told her that she was to deal with Ms. Spurrier only. (TAC ¶¶ 27-28.) A few moments after the conversation with Laffler ended, Ms. Spurrier contacted Plaintiff and allegedly made various threats, such as, "If you want war you'll get war, watch your back" and "we will see." (TAC ¶ 29.) On or about April 10, 2015, Plaintiff submitted requests for paid time off ("PTO") for July 9

_____

[1] Although Plaintiff's Third Amended Complaint is simply captioned "Amended Civil Action Complaint" (ECF No. 22), it shall be referred to herein as "TAC."

(the date of her son's passing) and July 12 (her late son's birthday). (TAC ¶¶ 31-35.) On July 2, 2015, after learning that her request for PTO had been denied, Plaintiff immediately went to Ms. Spurrier and requested to use her paid time off "as [an accommodation] for her disabilities," in response to which Ms. Spurrier stated, "Oh well, I don't know what to tell you[;] it was not approved." (TAC ¶¶ 35-36.) On July 6, 2015, after passing out on her way to work, Plaintiff saw her physician, Dr. Rosner, who determined that she had suffered from a nervous breakdown, rendering her unable to work for a period of three weeks. (TAC ¶¶ 37-39.) Plaintiff notified Ms. Spurrier of her doctor's determination that she not return to work for three weeks, and that she be placed on a limited schedule with more infrequent consecutive night shifts. (TAC ¶¶ 40-42.) Plaintiff was ultimately returned to the work schedule, but not in accordance with her doctor's directives. (TAC ¶ 54.) Plaintiff's hours were gradually reduced, and many of her regularly scheduled shifts were given to a newly hired co-worker, Ms. Fitch. (TAC ¶ 57.)[2] Plaintiff was eventually scheduled for a 12 to 18-hour work week, while Ms. Fitch maintained a full-time schedule. (TAC ¶ 61.)[3] Plaintiff made multiple attempts to contact both Defendant's HR department and Ms. Spurrier to inquire as to why her hours were gradually reduced, but received no response. (TAC 8-9.)[4] A few weeks after this schedule change, Plaintiff was removed from the schedule completely. (TAC ¶ 62.)[5]

---

[2] Incorrectly numbered as 55, this Paragraph is the 57th Paragraph of Plaintiff's Third Amended Complaint.

[3] Incorrectly numbered as 59, this Paragraph is the 61st Paragraph of Plaintiff's Third Amended Complaint.

[4] For clarity, the page number is provided instead of paragraph number, as the paragraphs are numbered incorrectly after Paragraph 55.

[5] Incorrectly numbered as 60, this Paragraph is the 62nd Paragraph of Plaintiff's Third Amended Complaint.

### III.    Standard of Review

#### A.  Rule 12(b)(1)

"Although it is a basic tenet of administrative law that a plaintiff should timely exhaust all administrative remedies before seeking judicial relief, the purpose of this rule is practical, rather than a matter of affecting substantive justice…[f]ailure to exhaust is in the nature of statutes of limitation and does not affect the District Court's subject matter jurisdiction." *Anjelino v. New York Times Co.*, 200 F. 3d 73, 87 (3d Cir. 1999) (internal quotations omitted). It is therefore more appropriate to assess Defendant's exhaustion and timeliness arguments in favor of dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Anjelino*, 200 F. 3d at 87 ("[T]he District Court should have considered the exhaustion and timeliness defenses presented in this case under Rule 12(b)(6), rather than under rule 12(b)(1).").

#### B.  Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard asks for more

than a sheer possibility that a defendant has acted unlawfully. *Id.*; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation omitted).

## IV. Discussion

### A. ADA Violations

Defendant moves to dismiss all remaining ADA claims within Count I of Plaintiff's TAC for failure to cure the deficiencies noted by the court in its prior decision, and for failure to timely raise said claims. (Def.'s Mot. Dismiss TAC 2, 10, ECF No. 23.)

As this Court originally noted in its August 11, 2017 Opinion, Plaintiff's ADA claims lacked "any level of specificity regarding what conduct is being attributed to what alleged violation." (Mem. Op. 5, ECF No. 20.) Plaintiff has since cured several of the material pleading defects identified in this Court's prior Memorandum. (Mem. Op. 5-7, ECF No. 20.) Specifically, Plaintiff has now presented facts in a manner that is sufficient to put Defendant on notice of what particular ADA violations are at issue.[6] Upon review of Plaintiff's TAC, this Court finds she has stated plausible claims for retaliation and hostile work environment, but has failed to sufficiently state a claim for disparate treatment or disparate impact.

---

[6] In particular, Plaintiff reconstructed the Paragraph numbered 73 on page 10 of the TAC to contain the allegation that this Court construes, together with the Factual Background (TAC, pp. 3-10), as a retaliation claim: "Defendant…ultimately terminated Plaintiff because of the known, accepted, and approved disabilities of Plaintiff…" (TAC 10.) Plaintiff specifically alleges disparate treatment, disparate impact, and hostile work environment. (TAC 10-11.) With the TAC as amended, Plaintiff demonstrates at least some attention to this Court's prior holding of defective pleading in that Plaintiff no longer attempts to merge the ADA claims into a single claim, as she did in her prior Complaint. (SAC 10-11.)

As a preliminary matter, this Court addresses Defendant's contention that Plaintiff's ADA claims are time-barred. (Def.'s Mot. Dismiss TAC 10, ECF No. 23.) It is certainly the case that "Title VII [and the ADA][7] allow a complainant 300 days from the alleged unlawful employment practice to file a charge of employment discrimination with the EEOC." *Zankel v. Temple Univ.*, 245 F. App'x 196, 198 (3d Cir. 2007). However, "[u]nder the continuing violation doctrine, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* While "[t]he Supreme Court has declared…that the continuing violation doctrine has no applicability to discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire…a continuation of, any earlier failures to accommodate," for example, will permit "relief for the earlier related" failures to accommodate. *Zankel,* 245 F. App'x at 198 (internal quotation and citation omitted). Therefore, "[a discrimination claim] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [300 day] time period." *Zielinski v. Kimberly-Clark Corp.*, Civ. 15-3053, 2016 U.S. Dist. LEXIS 83522, at *24 (E.D. Pa. Jun. 28, 2016) (internal citation and quotation omitted).

Defendant herein argues "any ADA claims based on discrete acts of alleged discrimination or failure to accommodate that occurred more than 300 days prior to the filing of

---

[7] "Decisions relating to the administration and judicial enforcement of Title VII claims are applicable to ADA claims by reason of Title VII's administrative and judicial enforcement provisions being incorporated by reference into the ADA." *Branum v. UPS*, 232 F.R.D. 505, n. 3 (W.D. Pa. 2005) (citing

Plaintiff's Charge with the EEOC, i.e., July 30, 2015, are time barred." (Def.'s Mot. Dismiss TAC 19, ECF No. 23.) However, Plaintiff alleges that as late as on or around September 2015, Defendant failed to acknowledge her accommodation request. (TAC ¶¶ 53-55). This Court views this failure to accommodate as a continuation of any earlier failure to accommodate. *Zankel,* 245 F. App'x at 198. Accordingly, to the extent Plaintiff's ADA claims relate to Defendant's continued failure to provide an accommodation for Plaintiff's disabilities, those claims are not time-barred and may proceed.

It is well settled that "…[the] ADA, ADEA and Title VII all serve the same purpose - to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). Within the Third Circuit, Motions to Dismiss discrimination claims are assessed by using the initial step of the burden shifting framework announced in *McDonnell Douglas Corp. v. Green* – the *prima facie* case. 411 U.S. 792, 793-94 (1973). More specifically, courts tend to use the *prima facie* case as an analytical guideline in assessing the plausibility of whether a plaintiff's claims comport with *Twombly/Iqbal* pleading standards. *See, i.e., Rogers v. E. Lycoming Sch. Dist.*, Civ. 17-0696, 2017 U.S. Dist. LEXIS 183618 (M.D. Pa. Nov. 6, 2017) (assessing the plausibility of Title VII claim using *prima facie* standard); *Taylor v. Delaware Bd. of Parole,* Civ. 12-1105, 2017 U.S. Dist. LEXIS 62967, at *7-12 (D. Del. Apr. 26, 2017) (assessing the plausibility of ADA claim by using the *prima facie* case as an analytical guideline); *Henderson v. Edens Corp.*, Civ. 09-1308, 2015 U.S. Dist. LEXIS 110001, at *20 (E.D. Pa. Aug. 20, 2015) (same). Thus, for a Complaint alleging discrimination to withstand a Motion to Dismiss, the facts alleged in said

Complaint must speak to the *prima facie* elements of the implicated discrimination claim, such that the "allegations…raise a reasonable expectation that discovery will reveal evidence of the necessary [*prima facie*] element." *Henderson*, 2015 U.S. Dist. LEXIS 110001, at *20 (internal quotation and citation omitted).

Utilizing this standard, each of Plaintiff's ADA claims shall be assessed in turn.

### i. ADA Retaliation

Count I of Plaintiff's TAC contains a claim for retaliation arising under the ADA. (TAC 10-11.)[8] "To establish a [*prima facie*] case of retaliation [under the ADA at the motion to dismiss stage], the plaintiff must [allege]: (1) [she] engaged in protected activity; (2) the employer took an adverse employment action against [her]; and (3) a causal connection between the protected activity and the adverse employment action." *LaRochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 698 (E.D. Pa. 2016).[9] "The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC." *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 191 (3d Cir. 2003). "[It] would seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge." *Id.* A good faith request for accommodation is therefore a protected activity under the ADA. *Id.*

The Third Circuit applies the same definition of "adverse employment action" in Title VII retaliation claims to retaliation claims under the ADA. *Fleck v. WILMAC Corp.*, Civ. 10-

---

[8] *See supra* n. 4.

[9] Again, at this stage, Plaintiff's burden is not to prove the *prima facie* case, but to factually allege the elements of a *prima facie* case. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

05562, 2012 U.S. Dist. LEXIS 42087 n. 5 (E.D. Pa., Mar. 27, 2012). "An adverse employment action must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Canete v. Barnabas Health Sys.*, 718 F. App'x 168, 169 (3d Cir. 2018) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) ("[An adverse employment action] other than discharge or refusal to rehire is…proscribed by Title VII [and the ADA]…if it adversely affects…[the plaintiff's] status as an employee.")). "[T]wo months is sufficient to state a claim for causation and withstand a motion to dismiss."[10] *Ginsburg v. Aria Health Physician Servs.*, Civ. 12-1140, 2012 U.S. Dist. LEXIS 124243, at *18 (E.D. Pa. Aug. 31, 2012) (citing *Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 761 (3d Cir. 2004)). "[A] court could reasonably find that [an] initial series of events…caused [the employee and the employer's] relationship to deteriorate, and set a pattern of behavior that [the employer] followed in retaliating against [the employee's] later [protected activity.]" *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 896 (3d Cir. 1993). "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." *Id.*

---

[10] When alleged in addition to other facts indicating discriminatory animus, two months was found to be sufficient at the motion to dismiss stage. *Vazquez v. Carr & Duff, Inc.*, Civ. 16-1727, 2017 U.S. Dist. LEXIS 160972, at *17 (E.D. Pa. Sep. 28, 2017). Moreover, "it is important to emphasize that it is *causation*, not temporal proximity or evidence of antagonism, that is an element of [a] plaintiff's [*prima facie*] case..." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (emphasis added) (internal citation omitted). In any event, this Court reiterates that it is not necessary for Plaintiff to prove causation at this stage. "After discovery, the court can…determine whether causation exists." *Ginsburg*, 2012 U.S. Dist. LEXIS 124243, at *18.

To that end, the actions of a supervisory employee are construed as those of the employer.[11] "An employee is a 'supervisor'…under Title VII [and the ADA] if he or she is empowered by the employer to take tangible employment actions against the victim." *Weston v. Pennsylvania,* 251 F.3d 420, 427 (3d Cir. 2001). "The term tangible employment action…constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 453; *see also Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 217 (3d Cir. 2017) (an employee serves the role of a supervisor if said employee is able to take actions against a victim that would affect the victim's pay).

Turning back to this matter, in or around March 2015, Plaintiff informed Defendant's HR Department that Ms. Spurrier, the individual in control of Plaintiff's scheduling, was consistently denying Plaintiff the paid time off that she requested due to depression and anxiety associated with the death of her son. (TAC ¶¶ 16, 23-26.) It is reasonable to infer that since Ms. Spurrier was in charge of Plaintiff's scheduling, she would have the ability to effectuate "a significant change in Plaintiff's employment status." *Weston*, 251 F.3d at 453. In the alternative, it is likely that Ms. Spurrier was able to affect Plaintiff's pay. *Moody*, 870 F.3d at 217. Therefore, it is not unreasonable to infer that Ms. Spurrier is a supervisory employee under the ADA. Following Plaintiff's communication with HR, Ms. Spurrier allegedly called Plaintiff and told her, "If you want war you'll get war, watch your back." (TAC ¶ 29.) On or around July 2, 2015, Plaintiff went to Ms. Spurrier, and requested to use her paid time off as an accommodation for her

---

[11] *See Levendos v. Stern Entertainment*, 909 F.2d 747, 754 (3d Cir. 1990) (finding actions of a supervisory employee may be imputed to the employer).

disabilities, to which Ms. Spurrier responded by saying, "Oh well, I don't know what to tell you[;] it was not approved." (TAC ¶ 36.) On September 28, 2015, Plaintiff resumed her normal schedule. (TAC ¶ 53.) Shortly thereafter, Plaintiff requested an accommodation for her work schedule, pursuant to her doctor's orders. (TAC ¶¶ 54-55.) This request for accommodation after returning to work constitutes a protected activity under the ADA. *Shellenberger*, 318 F. 3d at 191.[12] Between October and November 2015, Plaintiff's hours were gradually reduced and allegedly given to a newly hired employee. (TAC 8.)[13] Shortly after the reduction to between twelve (12) and eighteen (18) hours per week from more than forty (40) hours per week, Plaintiff was ultimately removed from the schedule completely. (TAC 9.)[14] Plaintiff did not receive a response upon request for an accommodation for her disabilities, nor did she receive one after contacting Ms. Spurrier and Defendant's HR Department to inquire as to why her hours were significantly reduced. (TAC 8-9.)[15] The total reduction in work hours constitutes an adverse employment action in accordance with Third Circuit precedent. *Canete*, 718 F. App'x at 169. Accordingly, "the overall scenario" set forth by Plaintiff in her Third Amended Complaint sufficiently alleges a causal connection between Plaintiff's accommodation request and the reduction/elimination of hours. *Robinson v. SEPTA*, 982 F.2d at 896. As such, Plaintiff has successfully pleaded a *prima facie* case for retaliation under the ADA.

---

[12] The requests for accommodation referred to in Paragraph 36, as well as Paragraphs 54-55 of Plaintiff's TAC both constitute protected activities under *Shellenberger*, 318 F.3d at 191. However, Plaintiff took FMLA leave after the first request. (TAC 6-7.) Therefore, in terms of proximity to the adverse employment event, the second request is less attenuated than the first.
[13] For clarity, the page number is provided instead of paragraph number, as the paragraphs are numbered incorrectly after Paragraph 55.
[14] *See supra* n. 13.
[15] *See supra* n. 13.

### ii. ADA Hostile Work Environment

Count I of Plaintiff's TAC contains a claim for hostile work environment arising under the ADA. (TAC 10.)[16] This Court notes that many of the events discussed with respect to Plaintiff's hostile work environment claim transpired before July 30, 2015 and would be time-barred if they were "discrete acts" such "as termination, failure to promote, denial of transfer, or refusal to hire." *Zankel*, 245 F. App'x at 198. However, in accordance with the continuing violation doctrine described *supra*, when "acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period," the acts that would otherwise be time-barred are actionable. *Zielinski*, 2016 U.S. Dist. LEXIS 83522, at *24.

To state a claim for hostile work environment at the motion to dismiss stage, a plaintiff must allege that: "1) [she] suffered intentional discrimination because of [her disability], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Id.* at *21.[17] Assessment of a claim in relation to these standards is governed by the following considerations:

> Given that the second prong, the "severe or pervasive" element, includes both an objective and subjective inquiry, this requirement substantially overlaps with the third and fourth elements of this Circuit's hostile work environment claim, which

---

[16]  *See supra* n. 13.

[17]  Relying upon *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 140 n. 6 (3d Cir. 2012), the *Zielinski* court determined that *prima facie* cases of hostile work environment under Title VII, ADA, and ADEA are functionally equivalent. *Zielinski*, 2016 U.S. Dist. LEXIS 83522, n. 9.  *See also Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir. 2007) (reiterating that "'the ADA, ADEA and Title VII all serve the same purpose – to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well.'") (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995)).

respectively require a plaintiff to establish (i) that the discrimination detrimentally affected him and (ii) that the discrimination would have detrimentally affected a reasonable person of the same protected class in his position. *Cf. Jensen*, 435 F.3d at 451 ("When applied, [the second and fourth prongs] coalesce into a single inquiry: did the plaintiff suffer . . . harassment severe or pervasive enough to alter the conditions of her employment and create an abusive working environment?" (internal quotation marks and citations omitted)).

*Brooks v. CBS Radio, Inc*., 342 F. App'x 771, 776 (3d Cir. 2009).

Regarding the first element, Plaintiff herein was denied requests for accommodations due to her disabilities on multiple occasions. (TAC ¶¶ 21, 31-36, 53-55.) Plaintiff alleges facts surrounding these requests both before and after July 30, 2015 that are not "different in kind." [18] *Zielinski,* 2016 U.S. Dist. LEXIS 83522, at \*25. In particular, Ms. Spurrier's initial comments after Plaintiff requested accommodations for her disabilities (TAC ¶¶ 27, 29) and subsequent silence (TAC ¶¶ 55, 57, 61)[19] contextualize Ms. Spurrier's denials of Plaintiff's requests such that the denials both before and after July 30, 2015 give rise to the reasonable inference that Ms. Spurrier intentionally discriminated against Plaintiff because of her disability.[20] Accordingly, Plaintiff has sufficiently alleged that she suffered intentional discrimination because of her disability.

---

[18] Plaintiff's later requests were associated with a doctor's orders (TAC 8), as opposed to her initial requests, which Plaintiff alleges were in relation to a specific diagnosis (TAC ¶¶ 20-23). However, the repeated denials by Ms. Spurrier both before and after July 30th are connected insofar as all of the denials were related to Plaintiff's disability.

[19] Incorrectly numbered as 57 and 61, these Paragraphs are the 59th and 63rd Paragraphs of Plaintiff's Third Amended Complaint.

[20] "In discussing the enactment of…the ADA, the Supreme Court observed that discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference...Moreover, federal agencies and commentators on the plight of the handicapped similarly have found that discrimination against the handicapped is primarily the result of apathetic attitudes rather than affirmative animus." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 264 (3d Cir. 2013) (citing *Alexander v. Choate*, 469 U.S. 287, 295 (1985)).

With respect to the second element, facts which indicate severe or pervasive discrimination . . .

> [I]nclude the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Discrimination in the form of a hostile work environment is only actionable when it is done 'because of' the plaintiff's membership in a protected class.

*Zielinski*, 2016 U.S. Dist. LEXIS 83522, at *28 (internal citation omitted).

Plaintiff herein alleges that on the date of her son's passing and his birthday, Plaintiff's anxiety levels "rose and made her unable to perform the essential functions of her job." (TAC ¶ 20). Therefore, Defendant's multiple denials of Plaintiff's requests for days off on the date of her son's death and his birthday as an accommodation for her disability speaks to an unreasonable interference in Plaintiff's work performance, as she would be unable to perform her job without those accommodations. Accordingly, Plaintiff has provided sufficient facts to sustain the second element of a hostile work environment claim.[21]

With respect to the third element, after the denial of Plaintiff's requests to accommodate her disabilities in March and April of 2015, Plaintiff states she "recalls having tunnel vision and passing out," and was subsequently diagnosed with a nervous breakdown. (TAC ¶¶ 23, 31, 33-34, 36-37.)  Accordingly, Plaintiff has sufficiently alleged that she was detrimentally affected by the allegedly hostile work environment. *See Harper v. Robert J. Casey, Jr. & Assocs.,* Civ. No.

---

[21]  This Court notes that the detrimental effects which speak to these elements occurred before July 30, 2015. However, the detrimental effect was associated with a failure to accommodate, therefore under the continuing violation doctrine the detrimental effect is actionable, because it is related to a failure to accommodate that took place after July 30, 2015.

14

95-7704, 1998 U.S. Dist. LEXIS 14354, at *26 (E.D. Pa. Sept. 14, 1998) (determining that since the plaintiff's "mental stability suffered greatly during the duration of her employment[,]" said Plaintiff sufficiently established that the allegedly hostile work environment detrimentally affected her).

Turning to the fourth element, Plaintiff's requests for time off were associated with anxiety and depression – medically-diagnosed disabilities. (TAC ¶ 16.) Said requests were directly related to her disability: "on the date[s] of her son's passing and his birthday…her levels of anxiety rose and made her unable to perform the essential functions of her job[.]" (TAC ¶ 20.) It is reasonable to infer that a person with a disability associated with the death of his or her child would be detrimentally affected by repeated denials of days off on the date of the child's death and birthday as an accommodation for said disability.

Finally, with respect to the fifth element, this Court must ask whether Plaintiff has sufficiently alleged the existence of *respondeat superior* liability:

> Under Title VII [and the ADA[22]], an employer's liability for [workplace] harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a supervisor, however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (internal quotations omitted).

---

[22] *Wishkin*, 476 F.3d at 185.

In its discussion regarding ADA Retaliation, this Court determined Ms. Spurrier was Plaintiff's supervisor. Therefore, the remaining issue is whether Ms. Spurrier's conduct culminated in a tangible employment action, in which case Defendant (employer) would be strictly liable. *Vance*, 570 U.S. at 424. Plaintiff alleges she was gradually removed from the work schedule over the course of two months after her most recent request for accommodations. (TAC 8-9.)[23] Plaintiff also received no response explaining why she was gradually being removed from the schedule. (TAC 8-9.)[24] Ms. Spurrier was allegedly the only individual in charge of Plaintiff's schedule. (TAC ¶¶ 25-26.) Therefore, this Court may reasonably infer the gradual removal of Plaintiff from the work schedule following a request for accommodation constitutes a tangible employment action on the part of Ms. Spurrier. Thus, Plaintiff has sufficiently alleged the existence of *respondeat superior* liability. Accordingly, Plaintiff has pleaded a plausible *prima facie* case for hostile work environment under the ADA.

### iii. ADA Disparate Treatment

Count I of Plaintiff's TAC contains a claim for disparate treatment arising under the ADA. (TAC 10-11.)[25] "In order to establish a prima facie case of disparate treatment [at the motion to dismiss stage]…a plaintiff must [allege] (1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000). The ADA defines "qualified individual" as "an

---

[23] *See supra* n. 13.
[24] *See supra* n. 13.
[25] *See supra* n. 13.

individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The determination of whether an individual with a disability is qualified is made at the time of the employment decision…and is inherently a question of fact." *Acevedo v. City of Phila.*, 680 F. Supp. 2d 716, 732 (E.D. Pa. 2010) (internal citation omitted).

"A reviewing court attempting to define…the essential functions of a particular job…must consider the employer's judgment as to what functions of a job are essential[.]" *Acevedo*, 680 F. Supp. 2d at 732. "The Third Circuit Court of Appeals has indirectly held that regular and predictable attendance can constitute an essential function of an employee's job." *Fischer v. Pepper Hamilton LLP*, Civ. 02-413, 2016 U.S. Dist. LEXIS 10603, at *30 (E.D. Pa. Jan. 29, 2016) (internal citation omitted). "[T]he inquiry into whether regular attendance constitutes an essential function of a job depends in large part on the nature of the job itself." *Id.* at *31. "[A] function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed." *Acevedo*, 680 F. Supp. 2d at 732.

Plaintiff's Third Amended Complaint adequately alleges that between 2011 and 2015, Plaintiff was able to perform her job. (TAC ¶ 18.) Including Plaintiff, there were only two individuals that worked the night shift as dietary aides, though Plaintiff worked alone during her shifts. (TAC ¶¶ 15, 19, 57.)[26] Plaintiff concedes that after her nervous breakdown, she could no longer work during her normal work schedule of four consecutive nights. (TAC ¶ 54.)

---

[26] Paragraph 57 is incorrectly numbered as 55 on page 8 of Plaintiff's Third Amended Complaint.

Additionally, Plaintiff distinguishes her performance between 2011 and 2015, from her subsequent inability to perform the job without working on consecutive nights. (TAC ¶ 18, 54.) This Court finds Plaintiff's Third Amended Complaint to be devoid of any facts that would permit an inference that she was able to perform her job at the time of the adverse employment action. Accordingly, Plaintiff has not adequately pled a *prima facie* case of disparate treatment.

### iv. ADA Disparate Impact

Count I of Plaintiff's TAC contains a claim for disparate impact arising under the ADA. (TAC 11.)[27] "A *prima facie* case of disparate impact discrimination requires that the plaintiff first identify the specific employment practice that is challenged. Second, the plaintiff must show causation by offering statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Acevedo*, 680 F. Supp. 2d at 741 (internal quotation and citation omitted).[28] Plaintiff herein has identified the specific employment practice that is challenged.[29] However, Plaintiff has not alleged any facts pertaining to the practice's effect on members of a protected group besides Plaintiff herself. Accordingly, Plaintiff has failed to sufficiently plead a *prima facie* case of disparate impact.

---

[27] *See supra.* n. 13.

[28] This Court reiterates that while it is not necessary for Plaintiff to *prove* the *prima facie* case, Plaintiff must "factually allege the elements" at this stage. *Carvalho-Grevious*, 851 F.3d at 257.

[29] "Defendant knew or should have known that its...persistent denials of Plaintiff's requests to use her paid time off had a disparate impact…" (TAC 11)

**B. FMLA Claim**

Defendant further seeks dismissal of Count II of Plaintiff's Third Amended Complaint, in which she alleges retaliation under the FMLA. Inasmuch as this Court previously determined that Plaintiff sufficiently pleaded a retaliation claim arising under the FMLA,[30] the court shall address Defendant's alternative request to strike Plaintiff's request for damages for "loss of professional development," "disruption of her personal life," and "loss of enjoyment of ordinary pleasures of life." (Def.'s Mot. Dismiss TAC 2, ECF No. 23.)

As this Court specifically stated in its prior decision, "[T]he remedies set forth in [29 USCS § 2617] are the exclusive remedies available for a violation of the FMLA." (Mem. Op. 16 ECF No. 20) (internal quotation and citation omitted). "The FMLA clearly limits the types of recovery allowed under the FMLA…emotional damages, pain and suffering, are not compensable under this Act." *Churchill v. Star Enters.*, Civ. 97-3527, 1998 U.S. Dist. LEXIS 6068, at *18 (E.D. Pa. Apr. 17, 1998).

Plaintiff continues to ask for damages that are not available under 29 USCS § 2617. (TAC ¶¶ 95-97.) Accordingly, these damages shall be stricken from Count II, leaving only those recognized by 29 USCS § 2617; namely, lost wages, front pay, back pay, equitable relief, and liquidated damages.

---

[30] Plaintiff's presentation of facts in Count II of her Third Amended Complaint does not differ substantially from those presented in Count II of her Second Amended Complaint. Accordingly, the analysis of Count II provided by this Court in its August 11, 2017 decision—wherein it was determined that Plaintiff sufficiently pleaded an FMLA retaliation claim—still applies. (Mem. Op. 7-10, ECF No. 20).

### C. Claim for Relief under the PHRA

Defendant seeks dismissal of Plaintiff's claim arising under the PHRA (Count III) on the grounds that it is time barred. (Def.'s Mot. Dismiss TAC 12, ECF No. 23.) In her Response to the instant Motion, Plaintiff agrees to dismissal of Count III. (Pl.'s Opp'n Def.'s Mot. Dismiss TAC 2, ECF No. 24.) Accordingly, this issue is rendered moot and Count III shall be dismissed with prejudice.

### D. Sanctions

Finally, Defendant requests that this Court sanction Plaintiff, awarding Defendant fees and costs incurred in connection with the preparation of the instant Motion to Dismiss. (Def.'s Mot. Dismiss TAC 20, ECF No. 23.) In support of this request, Defendant asserts Plaintiff has repeatedly violated Rules 8 and 10 of the Federal Rules of Civil Procedure. This Court shall construe Defendant's argument as one arising under Federal Rule of Civil Procedure 11(b).

"[Although Rule 11 is] cast in mandatory terms, the mandate of these provisions extends only to *whether* a court must impose sanctions, not to *which* sanction it must impose. Indeed, the language…requires only that a court impose an appropriate sanction." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 51 (1991) (emphasis in original). "A district court must impose sanctions once a violation of Rule 11 is found, but…retains broad discretion in determining the appropriate sanction under the rule, [which] may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Langer v. Monarch Life Ins. Co.,* 966 F.2d 786, 811 (3d Cir. 1992). "[T]he court may decide that the circumstances warrant imposition of only part of the adversary's expenses or perhaps only a reprimand." *Id.* at 811.

With respect to the violations of the ADA contained in Count I of Plaintiff's TAC, Plaintiff amended her pleadings to remedy defects to the extent that the TAC now sets forth facts in a manner that provides sufficient notice regarding "what conduct is being attributed to what alleged violation," and provides the Defendant "sufficient notice to prepare their defense" with respect to the ADA retaliation and hostile work environment claims contained therein. (Mem. Op. 5, ECF No. 20.) However, as discussed more fully hereinabove, other instances of defective pleading have yet to be cured. Therefore, in accordance with Rule 11 jurisprudence, this Court shall deny Plaintiff further leave to amend said claims. This sanction is particularly sufficient in light of the fact that Defendant's first two Motions to Dismiss were rendered moot by reason of Plaintiff's amendments in response, and were therefore not addressed on the merits. Accordingly, Defendant's request for award of fees and costs is denied.

### V.     Conclusion

For the reasons set forth herein, the disparate treatment and disparate impact claims contained in Count I of Plaintiff's TAC are dismissed with prejudice, Count III of Plaintiff's TAC is dismissed with prejudice, and the request for non-recoverable damages under the FMLA is hereby stricken from Count II. Defendant's Motion to Dismiss the ADA Retaliation and Hostile Work Environment claims in Count I of Plaintiff's TAC is denied. Defendant's request for award of fees and costs in connection with the preparation of the instant motion to dismiss is similarly denied.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II     J.